United States District Court
District Of Maine

Leo S. Paraskevopoulos,           )
                                  )
    Plaintiff,                    )
                                  )
v.                                )     Docket No. 2:17-cv-00166-JAW
                                  )
Central Maine Medical Center,     )
                                  )
    Defendant.                    )

## Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on Defendant's affirmative defense that Plaintiff failed to mitigate his lost wage damages.[1] Applying the First Circuit's rigorous standard for employers asserting this affirmative defense in employment discrimination cases, this Court has in prior cases granted summary judgment to a plaintiff on this defense. *See, e.g., King v. Maine, Dep't of Corr.*, No. 1:13-CV-00163-JDL (D. Me. July 12, 2016) (ECF No. 94, attached as Exhibit 1) (quoting and following *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999) when granting partial summary judgment to plaintiff on defendant's failure-to-mitigate defense).

---

[1] *See* Defendants' Answer to Plaintiff's Second Amended Complaint, Seventh Defense (ECF No. 13 at p. 9).

When the record here is measured against the First Circuit's demanding standard, as a matter of law Defendant cannot prevail on its affirmative defense that Plaintiff failed to mitigate his lost wage damages.

## Undisputed Facts

Plaintiff Mr. Paraskevopoulos began his post-graduate residency in family medicine at Defendant Central Maine Medical Center (CMMC) in July 2011. Plaintiff's Statement of Material Facts ("PSMF"), ¶ 1. CMMC terminated Mr. Paraskevopoulos's employment in the program in January 2014. PSMF ¶ 2. After his termination from the CMMC residency program, Mr. Paraskevopoulos requested a certificate of completion from CMMC that he had completed two years of post-graduate residency training (PGY-1 and PGY2), but Program Director Donald Woolever refused, stating that he would give a statement certifying that Mr. Paraskevopoulos had completed PGY-1 training but not PGY-2. PSMF ¶ 3.

Since his termination by CMMC in 2014, Mr. Paraskevopoulos has made substantial efforts to find new employment, both inside and outside the medical profession. He has applied to over 130 residency programs, and applied to the residency "match" twice a year for three-and-a-half years. PSMF ¶¶ 5-7. CMMC has no knowledge of any information suggesting that

Mr. Paraskevopoulos did not make reasonable efforts to find another residency program after he was fired by CMMC. PSMF ¶ 10.

Mr. Paraskevopoulos also applied to a number of non-residency jobs, including positions with GlaxoSmithKline, the University Health Network, McMaster University Health Sciences Program, Brock University, and the Ontario Hospital Association. PSMF ¶ 7. In addition, Mr. Paraskevopoulos contacted medical licensing boards throughout the Northeast, including Maine, but was told he does not meet the requirements to be licensed as an M.D. because he has completed only one year of residency. PSMF ¶ 8. He likewise does not meet the requirements for medical licensure in Canada. PSMF ¶ 9.

Despite his exhaustive work search, since his termination, Mr. Paraskevopoulos has been unable to find any position in another residency program, or any paying position as a medical professional. PSMF ¶ 11. A resident's termination from the CMMC residency program has a significant negative effect on the resident's ability to be admitted to another residency program to complete; that alone might be reason enough for other residency programs not to consider the resident's application further. PSMF ¶ 12. Another reason it would likely be harder for Mr. Paraskevopoulos to find a new residency program is that the new program might not be able to get full

federal funding for an additional two years of residency with Mr. Paraskevopoulos. PSMF ¶ 13.

In addition, CMMC gave an unfavorable reference to the only residency program that seriously considered Dr. Paraskevopoulos's application. In February 2016, after Mr. Paraskevopoulos filed his discrimination complaint with the Maine Human Rights Commission and Equal Employment Opportunity Commission, the program director of another residency program who was considering hiring Mr. Paraskevopoulos called to speak to Dr. Woolever as an employment reference. PSMF ¶ 14. Dr. Woolever refused to speak to the program director as he normally spoke to potential employers of former residents; the program director was instead told that CMMC could not release information about Dr. Paraskevopoulos for "legal reasons" and that she would have to contact CMMC's legal counsel for more information. PSMF ¶ 15. Unsurprisingly, it "[d]oes not help [a resident's] candidacy" to have a reference say they cannot provide information for legal reasons. PSMF ¶ 16.

Despite his diligent efforts, Mr. Paraskevopoulos has been unable to secure employment comparable to work as a family physician. Following his termination by CMMC, from January 2016 through December 2016, Mr. Paraskevopoulos worked as a contract-based research assistant. PSMF ¶ 17. Most recently, from March 2017 to the present, Mr. Paraskevopoulos has worked as a partner of Stile Carpentry Ltd. in Ontario, Canada. PSMF ¶ 18.

4

## Argument

An allegation of failure to mitigate damages is an affirmative defense on which the defendant must carry the burden of persuasion. *See Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 15-16 (1st Cir. 1999). Under First Circuit precedent, "[a]s long as the claimant has made some effort to secure other employment, the burden to prove failure to mitigate normally resides with the defendant employer." *Id.* at 16; *see also Webber v. International Paper Co.*, 307 F. Supp.2d 119, 126 (D. Me. 2004) ("The burden is on the defendant to prove facts relating to the appropriate deductions from back pay.") (construing Maine law).

The employer is relieved of its burden to prove this affirmative defense only in the "relatively rare case" in which an employee has "remained completely idle following her discharge," that is, the employee "sought no jobs" and "t[ook] no action to obtain employment." *Quint*, 172 F.3d at 16; *see also Webber*, 307 F. Supp.2d at 126 (D. Me. 2004) (holding that although plaintiff applied for only six jobs in a given year, only three of which he could remember, plaintiff nevertheless made the requisite "minimal effort to obtain alternate employment" that year and thus under *Quint* precedent the burden of proving failure to mitigate remained with employer).

When the employee has made the requisite minimal effort to obtain employment, the burden remains on the employer to "show that (i) though

5

substantially equivalent jobs were available in the relevant geographic area, (ii) the claimant failed to use reasonable diligence to secure suitable employment." *Quint*, 172 F.3d at 16.

The employer's burden to make this two-prong showing is demanding. As to the first prong, a position is only "substantially equivalent" if it provides "*virtually identical* promotional opportunities, compensation, job responsibilities, working conditions, and status." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) (emphasis added). Further, the employer's proof regarding substantially equivalent jobs "extends only to jobs available in the relevant geographic area." *Harding v. Cianbro Corp.*, 498 F. Supp. 2d 344, 358 (D. Me. 2007) (citation omitted). As to the second prong, "[t]o show that the plaintiff was not sufficiently diligent in pursuing other employment, the defendant must do more than show that plaintiff could have taken further actions in pursuit of employment: 'the range of reasonable conduct is broad and the injured plaintiff must be given the benefit of every doubt in assessing her conduct.'" *Webber,* 307 F. Supp. 2d at 126 (D. Me. 2004) (quoting *Me. Human Rights Comm'n v. Dept. of Corr.*, 474 A.2d 860, 869).

It is undisputed that Mr. Paraskevopoulos has made "some effort" to find alternate employment. *Quint*, 172 F.3d at 16. As detailed above, since his termination in 2014, Mr. Paraskevopoulos has applied for hundreds of

residency programs; has applied for a variety of other jobs in other fields and locations; and, most recently, has set up his own carpentry business. PSMF ¶¶ 5-7, 17-18. The undisputed facts demonstrate that Plaintiff has been far from "completely idle" following his discharge, see *Quint*, 172 F.3d at 16; instead, he has conducted a diligent job search that goes well beyond the "minimal effort" required of the plaintiff, see *Webber*, 307 F.Supp.2d at 126.

Therefore, the burden remains on Defendant to prove its affirmative defense of failure to mitigate. The mandatory Initial Disclosure Rule, of course, required Defendant to produce all of the evidence that it "may use to support" this affirmative defense. Fed. R. Civ. P. 26(a)(1)(A)(i-ii). And the Rules also require that the Initial Disclosure be supplemented "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A).

However, Defendant has never designated any experts and has never produced any evidence to support its affirmative defense of failure to mitigate. In particular, CMMC has produced no evidence to demonstrate **either** (i) that there were substantially equivalent positions available to Plaintiff in his geographical area or (ii) that Plaintiff "failed to use reasonable diligence" to acquire a substantially equivalent position. *See Quint*, 172 F.3d at 16. To the contrary, CMMC affirmatively stated that it has no information suggesting that Mr. Paraskevopoulos did not make reasonable efforts to find another residency program after he was fired by CMMC. PSMF ¶ 10.

7

Therefore, the record is insufficient as a matter of law to permit a reasonable fact-finder to conclude that Defendant has met its two-prong burden to prove that Mr. Paraskevopoulos failed to mitigate his damages.

## Conclusion

The undisputed facts show that Plaintiff conducted a diligent job search after his 2014 termination, going well beyond the "minimal effort" required of the Plaintiff. The burden remains on Defendant to prove its affirmative defense of failure to mitigate, and Defendant has designated no experts and produced no evidence in the now-expired discovery period to meet that burden. Under the directly applicable First Circuit precedent, this Court should grant Plaintiff's partial summary judgment on Defendant's affirmative defense that Plaintiff failed to mitigate his lost wage damages.

Date: October 31, 2018            Respectfully submitted,

/s/David G. Webbert
David G. Webbert, Esq.
Carol J. Garvan, Esq.
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
Tel: 207-623-5110
dwebbert@work.law
cjgarvan@work.law

*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on October 31, 2018 I electronically filed this filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.


Date: October 31, 2018          /s/David G. Webbert
                                Johnson, Webbert & Young, LLP
                                160 Capitol Street, P.O. Box 79
                                Augusta, Maine 04332-0079
                                Tel: 207-623-5110
                                dwebbert@work.law