| | | |
|---|---|---|
| LEO S. PARASKEVOPOULOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00166-JAW |
| | ) | |
| CENTRAL MAINE MEDICAL CENTER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

In this disability discrimination, failure to accommodate, and retaliation case, an employer has made a limited objection to the Magistrate Judge's recommended decision, recommending the denial of its partial motion for summary judgment. Specifically, the employer objects to the Magistrate Judge's conclusion regarding the proper legal standard to apply to the employee's disability discrimination claim under the Rehabilitation Act. The employer says that the proper legal standard is "solely by reason of," requiring the employee to prove that the alleged discrimination was the sole cause of his harm, and that the Magistrate Judge applied a lesser standard— that the employee only need show that the discrimination was based "in whole or in part" on his disability.

The Court views the Magistrate Judge's recommended decision as to all elements of the employer's partial summary judgment motion as thorough and correct, and the Court affirms its decision without repeating its logic. *See Talbott v.*

*C.R. Bard, Inc.*, 63 F.3d 25, 31 (1st Cir. 1995). Nevertheless, the Court writes briefly to expand on the Magistrate Judge's discussion of the causation standard under the Rehabilitation Act for disability discrimination claims in light of the employer's objection and the employee's response. However, the Court declines to issue a ruling on which legal standard should be applied to the Rehabilitation Act claim because it views such a ruling as a constitutionally impermissible advisory opinion.

## I.   .BACKGROUND

### A.   CMMC's Motion for Partial Summary Judgment

Central Maine Medical Center (CMMC) moved for summary judgment on the claims that comprise Count One of Leo S. Paraskevopoulos' complaint: "disability discrimination, failure to accommodate and retaliation under the Maine Human Rights Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act; interference and retaliation under the Family Medical Leave Act and the Maine Family Medical Leave Requirements; and punitive damages." *Def.'s Partial Mot. for Summ. J.* at 2 (ECF No. 69) (*Def.'s Mot.*).

In relevant part, CMMC argued that Dr. Paraskevopoulos "cannot establish a prima facie case of disability discrimination and, even if he could, the evidence shows that his employment was terminated because of his performance deficiencies." *Id.* at 5. CMMC applied the "sole cause" causation standard under section 504 of the Rehabilitation Act. *Id.* at 6. Thus, according to CMMC, the disability discrimination claim fails under "the *McDonnell Douglas* burden-shifting framework." *Id.*

### B.   Leo S. Paraskevopoulos' Objection to CMMC's Motion for Partial Summary Judgment

Dr. Paraskevopoulos responded that there are genuine issues of material fact as to whether CMMC discriminated against him because of his disability, stating that a reasonable jury could find that (1) he was disabled, (2) he was capable of performing the essential functions of his job as a family practice resident, (3) he was terminated because of his disability, and (4) CMMC's stated reason for firing him—"performance deficiencies" —was pretextual. *Id.* at 23-28.

In making this argument, Dr. Paraskevopoulos rejected the "sole cause" standard that CMMC applied, pointing out that "the only case cited by CMMC does not hold that sole causation is the standard in a discrimination claim under section 504 of the Rehabilitation Act, but instead specifically states, to the contrary, that the causation standard under Section 504 is an 'open question'" not reached in the case. *Id.* at 23-24 (quoting *Leary v. Dalton*, 58 F.3d 748, 752 (1st Cir. 1995)).  Dr. Paraskevopoulos asserted that instead "this Court should effectuate Congress's intent by applying the ADA's motivating-factor causation standard for substantive discrimination under both statutes." *Id.* at 24.  However, even if the Court applied the "sole cause" standard, Dr. Paraskevopoulos stated, "the evidence is more than sufficient for a reasonable jury to conclude that [Dr. Paraskevopoulos] was terminated 'solely because of' his disability." *Id.*

### C. CMMC's Reply to Leo S. Paraskevopoulos' Objection to CMMC's Motion for Partial Summary Judgment

In reply, CMMC asserted that the "sole cause" standard, not the "motivating-factor causation standard," applies to the claims under section 504 of the

Rehabilitation Act based on the "plain language of the statutes and the applicable case law." *Id.* at 3-5 (citing, among other cases, *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002)). CMMC rejected Dr. Paraskevopoulos' statement that the standard is an open question in the First Circuit by citing case law applying the sole causation standard to non-employment discrimination. *Id.* at 5 (citing *Lesley v. Hee Man Chie*, 250 F.3d 47, 53 (1st Cir. 2001), and *Maine Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 408 (D. Me. 2011)). CMMC added that Dr. Paraskevopoulos failed to meet the "sole cause" standard because his arguments only prove that he was terminated *because of* his disability." *Id.* at 5 (emphasis in original) (quoting *Pl.'s Obj.* at 26).

### D. Magistrate Judge's Recommended Decision

The Magistrate Judge recommended that the Court deny CMMC's Motion for Partial Summary Judgment "except to the limited extent that it is conceded by [Dr. Paraskevopoulos]":

> Specifically, [he] recommend[s] that the Court grant the defendant's motion for partial summary judgment with respect to (i) the plaintiff's MHRA and ADA claims based on discrete adverse actions that occurred more than 300 days before his MHRC complaint was filed and (ii) any requested punitive damages pursuant to his Rehabilitation Act, FMLA, and MFMLR claims, and otherwise deny it.

*Rec. Dec. on Def.'s Mot. for Partial Summ. J.* at 2 (ECF No. 107) (*Rec. Dec.*).

The Magistrate Judge applied the *McDonnell Douglas* burden-shifting approach to Dr. Paraskevopoulos' disability discrimination claim. *Id.* at 14. The Magistrate Judge determined that Dr. Paraskevopoulos met all three elements of a prima facie case of discrimination. *Id.* at 15-20. The Magistrate Judge concluded

that "a reasonable juror could find that [Dr. Paraskevopoulos'] disability was the sole cause of his termination," pointing out that CMMC "relies heavily on statements of material facts that are either qualified or denied," that Dr. Paraskevopoulos' argument that his disability caused his performance issues created a triable issue, and that Dr. Paraskevopoulos argued that CMMC "expressed overt hostility toward his disability." *Id.* at 19-20. The Magistrate Judge noted that, although the parties disagree as to what causation standard applies to the Rehabilitation Act, he "need not and do[es] not reach the question of which standard applies in Rehabilitation Act cases" because he concludes that Dr. Paraskevopoulos met the higher standard. *Id.* at 13 n.6.

Having established that Dr. Paraskevopoulos met his initial burden, the Magistrate Judge shifted the burden to CMMC to provide a non-discriminatory reason for its termination of Dr. Paraskevopoulos' employment. *Id.* at 20. He concluded that CMMC met it burden by arguing that "it took this action on the basis of [Dr. Paraskevopoulos'] deficient job performance." *Id.*

The Magistrate Judge then applied the last prong of the test, which requires Dr. Paraskevopoulos to meet his "burden of generating a triable issue as to whether [CMMC's] stated reasons for his job termination were pretextual and, ultimately, whether the real reason was animus based on disability." *Id.* The Magistrate Judge concludes that Dr. Paraskevopoulos met this burden. *Id.*

E.     **CMMC's Objection to the Magistrate Judge's Recommended Decision**

CMMC made a limited objection to the Magistrate Judge's recommended

decision, asking the Court for a "legal ruling on the applicable standard required under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794." *Def.'s Limited Obj. to Rec. Dec. on Def.'s Mot. for Partial Summ. J.* (ECF No. 109) (*Def.'s Obj.*). CMMC asserted that "[t]he Recommended Decision does not make a determination as to which legal standard applies—sole cause or motivating factor— as it avoids this legal question on a factual basis, but does not elucidate the particular facts that lead to that recommended conclusion." *Id.* at 2 (citing *Rec. Dec.* at 13 n.6). CMMC acknowledged "this Court's prerogative to reserve judgment on this issue" but asked for "judicial guidance as to which standard is correct in order to effectively prepare for trial." *Id.* at 4.

CMMC relied primarily on the Fifth Circuit's language in *Soledad* to argue that the "sole cause" standard applies because "in amending the Rehabilitation Act, 'Congress chose not to repeal the solely by reason of language of §794(a),'" and thus, as in *Soledad*, where "the 'motivating factor' jury instruction that the *Soledad* trial court gave 'was clearly an error as a matter of law," the Court should not use the motivating-factor standard here. *Id.* at 3 (quoting *Soledad*, 304 F.3d at 505). CMMC also cited Sixth Circuit caselaw in favor if its interpretation. *See id.* at 2-3 (citing *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 602 (6th Cir. 2014); *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir. 1996)).

CMMC then addressed *Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019), a recent Second Circuit case that disagreed with *Soledad*. *Def.'s Obj.* at 3 (citing *Pl.'s Notice of Suppl. Authority* (ECF No. 106) (*Pl.'s Notice*)). In response to

*Natofsky* describing section 794(d) as "'a carve-out for employment discrimination claims' under the Rehabilitation Act," CMMC states, "[t]he *Natofsky* court was seemingly uninterested in the idea that by leaving § 794(a) in place in the 1992 amendments, Congress incorporated only the burden-shifting framework but not the lowered burden of causation from ADA case law." *Id.* at 3.

CMMC reiterated its earlier argument that, contrary to the Magistrate Judge's opinion, "a reasonable fact finder could not conclude that [Dr. Paraskevopoulos] can meet this exacting [sole cause] standard." *Id.* at 4. Specifically addressing the conclusion that Dr. Paraskevopoulos' bipolar disorder may have caused his sleep deprivation, CMMC argued that "there is one particular fact in the summary judgment record showing this argument cannot meet the 'sole cause' standard—that [Dr. Paraskevopoulos] testified that there were 'a million' reasons why he may have been sleep deprived and overly exhausted." *Id.* at 5 (quoting *Parties' Consolidated Statement of Material Facts (Def.'s Mot. for Summ. J.)* (ECF No. 86) at ¶ 118 (SMF)):

> In particular, by November 2013, [Dr. Paraskevopoulos] had likely not taken a night call in three weeks "because of sleep deprivation," (SMF ¶ 118 (qualification)), or due to "a symptom of [his] medical condition" (SMF ¶ 118 (qualification)), "or a million other reasons . . ." (SMF ¶ 118 (in both posited fact and qualification)).

*Id.* (some alterations in original). According to CMMC, "[i]t is difficult to understand how [Dr. Paraskevopoulos] could satisfy the 'sole cause' standard in the Rehabilitation Act § 794(a), when his claimed disability was but one of an admitted million potential reasons that [he] was sleep deprived and exhausted and not adequately performing his job." *Id.*

**F.    Leo S. Paraskevopoulos' Response to CMMC's Objection to the Magistrate Judge's Recommended Decision**

Dr. Paraskevopoulos made four arguments in response to CMMC's objection. *Pl.'s Resp. to Def.'s Limited Obj. to Rec. Dec. (ECF No. 107) on Def.'s Mot. for Partial Summ. J.* (ECF No. 111) (*Pl.'s Resp.*).    First, Dr. Paraskevopoulos asserted that "[o]nly [his] intentional disability discrimination claim under the Rehabilitation Act is even arguably governed by the 'sole cause' standard." *Id.* at 1.

Second, Dr. Paraskevopoulos cited *Natofsky* as "the most recent and best reasoned federal court of appeals decision on the causation standard for a Rehabilitation Act claim of intentional disability discrimination . . .." *Id.* at 2.    Dr. Paraskevopoulos noted the Second Circuit's use of "the fundamental canon of statutory construction that '[i]f there is a conflict between a general provision and a specific provision, the specific provision prevails.'" *Id.* (alternation in original) (quoting Antonin Scalia & Bryan Gardner, Reading Law: The Interpretation of Legal Texts 183 (2012)).    He continued, "[t]he Second Circuit's analysis, leaving in place the 'sole cause' standard for non-employment cases, comports fully with Justice Scalia's scholarship on how the general/specific canon should be applied . . .." *Id.* at 4.    Dr. Paraskevopoulos added that the Second Circuit's interpretation is further supported by the "principle of statutory construction that a later-enacted statute that contradicts an earlier one effectively repeals it." *Id.* (quoting Scalia & Gardner, *supra*, at p. 185).    He concluded, "[g]iven that Congress specifically amended the Rehabilitation Act in 1992 to incorporate the ADA's standards for liability, this Court should effectuate Congress's intent and apply the ADA's motivating-factor causation

standard to [Dr. Paraskevopoulos'] substantive discrimination claim under the Rehabilitation Act." *Id.* (footnote omitted).

Third, Dr. Paraskevopoulos argued that he meets the "sole cause" standard even if the Court applies it. *Id.* at 4-5. He reiterated his previous points and the Magistrate Judge's conclusions on this issue. *Id.* at 5-8.

Fourth, Dr. Paraskevopoulos specifically addressed CMMC's argument regarding his statement that there were "a million" reasons why he may have been sleep deprived. *Id.* at 8. Dr. Paraskevopoulos argued that "CMMC's reliance on this snippet of deposition testimony fundamentally misconstrues the causation element in an employment discrimination case" because Dr. Paraskevopoulos "does not need to prove that his job was the sole cause of his sleep deprivation, but rather that his disability was the sole cause of his termination." *Id.* at 9.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 72(a)

When a magistrate judge "passes upon a dispositive motion, he or she may only issue a recommended decision, and if there is a timely objection, the district judge must engage in de novo review." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (citing Fed. R. Civ. P. 72(b)). When a magistrate judge decides a question of law in a non-dispositive motion, "there is no practical difference between review under Rule 72(a) 'contrary to law' standard [for non-dispositive motions] and review under Rule 72(b)'s de novo standard [for dispositive motions]." *Id.* at 15. The correct standard of review for a magistrate judge's recommended decision on a motion for

partial summary judgment is de novo.  *See Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 26-27 (1st Cir. 2007) (explaining that the district court applied de novo review to a motion for partial summary judgment); *Duckworth v. Mid-State Mach. Prods.*, No. 09-cv-00279-B–W, 2009 WL 3617510, at *1 (D. Me. Oct. 28, 2009) (referring to a partial summary judgment motion as a dispositive motion).

## B.    Causation Standard Under the ADA

"The ADA prohibits discrimination against 'a qualified individual with a disability because of the disability of such an individual in regard to . . . terms, conditions, and privileges of employment.'" *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 99 (1st Cir. 2007) (quoting 42 U.S.C. § 12112(a)); *see also Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 27 (1st Cir. 2019).  The adverse employment action must be "because of, in whole or in part, [the employee's] protected disability."[1] *Freadman.*, 484 F.3d at 99 n.7.

## C.    Causation Standard Under the Rehabilitation Act

There is a circuit split regarding whether the causation standard for an employment discrimination claim under section 504 of the Rehabilitation Act is the same as or higher than the ADA standard.  The disagreement centers on which part

---

[1]      Multiple circuits have held that, in light of two United States Supreme Court cases—*University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), and *Gross v. FBL Financial Services, Inc.*, 557 Cir. U.S. 167 (2009)—"ADA discrimination claims under Title I must be evaluated under a but-for causation standard" rather than a "motivating factor" standard.  *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019); *see also Natofsky v. City of New York*, 921 F.3d at 346-49; *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 234 (4th Cir. 2016); *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 318-19 (6th Cir. 2012); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961-62, 963 (7th Cir. 2010).  Dr. Paraskevopoulos argues that the "motivating factor" standard applies and CMMC does not object to that interpretation of the ADA causation standard. The Court does not reach the issue of what standard must be used for ADA discrimination claims because it is beyond the scope of CMMC's objection.

of the statute controls: section 794(a) or section 794(d) of Title 29 of the United States

Code. Section 794(a) states, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (emphasis supplied). Section 794(d), added in 1992, Rehabilitation

Act Amendments of 1992, Pub. L. No. 102-569, § 506, 106 Stat. 4344, 4428, states:

> *The standards* used to determine whether this section has been violated in a complaint alleging employment discrimination under this section *shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.*

29 U.S.C. § 794(d) (emphasis supplied).

The Fifth Circuit has held that, between sections 794(a) and 794(d), section

794(a) "is clearly the more specific" because, in amending the Rehabilitation Act,

"Congress chose not to repeal the 'solely by reason of' language of §794(a) . . .."

*Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002). Thus, the Fifth

Circuit reasoned, "Congress did not intend to adopt the ADA standard of causation

with the § 794(d) amendment." *Id.* The Fifth Circuit added that "the [motivating-

factor] instruction to the jury was clearly an error as a matter of law" and that

"[l]iability can only be found when the discrimination was 'solely by reason of her or

his disability[]' . . .." *Id.*

By contrast, the Second Circuit recently held that "when a plaintiff alleges an employment discrimination claim under the Rehabilitation Act, the causation standard that applies is the same one that would govern a complaint alleging employment discrimination under the ADA." *Natofsky*, 921 F.3d at 345. The *Natofsky* Court relied on the "established canon of construction that a specific provision 'controls over one of more general application.'" *Id.* (quoting *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991)) ("[Section] 794(a) establishes a general causation standard that applies to most discrimination claims brought under the Rehabilitation Act, but [section] 7[94](d) removes employment discrimination claims from the application of [section] 794(a)'s general causation standard and mandates the application of the ADA's causation standard"). The Second Circuit also noted that section 794(d) "came later in time" as a factor in favor of section 794(b) being more specific than section 794(a). *Id.* at 345 n.1. The Second Circuit acknowledged that its "reading of these two provisions conflicts with the Fifth Circuit's holding" in *Soledad*. *Id.*

This issue, in the employment context, remains an open question in the First Circuit. *See Leary v. Dalton*, 58 F.3d 748, 752 (1st Cir. 1995) ("We therefore regard the applicability of § 504 and its sole causation test in this federal employment suit as an open question; but one that we need not reach here").

## III. ANALYSIS

Applying de novo review, the Court concludes that Dr. Paraskevopoulos has satisfied both the "motivating factor" standard and the higher "sole cause" standard

by providing evidence that, when viewed in the light most favorable to the nonmovant, could lead a reasonable juror to find that Dr. Paraskevopoulos' disability was the sole cause of his termination. The Court agrees with the Magistrate Judge that (1) most of the statements of facts that CMMC relies on are "either qualified or denied" and thus "reflect[] a core factual dispute," (2) Dr. Paraskevopoulos presents a "triable issue" in arguing that his disability caused any performance issues, such as tardiness or dislike from coworkers, and (3) Dr. Paraskevopoulos' argument that CMMC "expressed overt hostility toward his disability" by "making him repeat overnight shifts that he had already completed" presents a genuine issue of material fact. *Rec. Dec.* at 19-20.

The Court disagrees with CMMC that Dr. Paraskevopoulos' statement regarding the "million" reasons why he may have been sleep deprived shows that "this argument cannot meet the 'sole cause' standard . . .." *Def.'s Obj.* at 5 (quoting SMF ¶ 118). First, a self-diagnosis from someone (even a family practice resident) suffering from sleep deprivation as a result of bipolar disorder does not resolve the factual dispute as to whether Dr. Paraskevopoulos' disability caused his performance issues.

Second, regardless of the reliability of the statement, it is unclear what "million" other reasons Dr. Paraskevopoulos was referring to, SMF ¶ 118, and whether they were caused by his disability.

Third, the Court agrees with Dr. Paraskevopoulos that he "does not need to prove that his job was the sole cause of his sleep deprivation, but rather that his

disability was the sole cause of his termination." *Pl.'s Resp.* at 9. Evidence of factors other than working nights that led to Dr. Paraskevopoulos' sleep deprivation is irrelevant as to whether factors other than his disability caused his termination. If anything, the connection between Dr. Paraskevopoulos' "symptom of [his] medical condition," SMF ¶ 118, and the fact that he did not have night calls presents a stronger case for Dr. Paraskevopoulos' argument that his disability caused his performance issues.

The Court need not, and will not, rule on what causation standard applies under the Rehabilitation Act because Dr. Paraskevopoulos meets the higher standard. CMMC acknowledges the Court's "prerogative to reserve judgment on this issue" but asks for judicial guidance to help prepare for trial. *Def.'s Obj.* at 4 n.1 ("On a recent phone call with Plaintiff's counsel, both sides seem to be in limited agreement that guidance from the Court would be helpful to prepare for trial"). However, the Court remains constrained against issuing advisory opinions under Article III of the United States Constitution, which limits the Court's jurisdiction to real "cases" or "controversies." U.S. CONST. art. III, § 2. Even though the parties may be interested in receiving judicial guidance on this issue, "an advisory opinion cannot be extracted from a federal court by agreement of the parties . . .." *Barr v. Matteo*, 355 U.S. 171, 172 (1957).

Pending before the Court is a motion for summary judgment and the Court need not resolve the legal standard in order to resolve the motion. Indeed, if this case goes to trial, it may not be necessary to resolve the legal standard as the Court may

instruct the jury on alternative legal standards to determine whether the two standards make a difference in the verdict. The Court may be required to issue a direct ruling on the issue only if the jury finds liability under the lesser, but not the more onerous standard. On the issue of the proper legal standard, at least at this juncture, the parties will have to rely on the advice of their learned legal counsel, not an order of this Court.

## IV. CONCLUSION

1. The Court <u>AFFIRMS</u> the Recommended Decision of the Magistrate Judge (ECF No. 107).

2. The Court <u>GRANTS</u> the Defendant's Partial Motion for Summary Judgment with respect to (1) the Plaintiff's MHRA and ADA claims based on discrete adverse actions that occurred more than 300 days before his MHRC complaint was filed and (2) any requested punitive damages pursuant to the Plaintiff's Rehabilitation Act, FMLA, and MFMLR claims, and <u>DENIES</u> the Defendant's Partial Motion for Summary Judgement with respect to all other claims (ECF No. 69).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 25th day of September, 2019